UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IBARRA CONSULTING ENGINEERS INC and RAQUEL IBARRA, <br><br>*Plaintiffs,* <br><br>v. <br><br>JACOBS ENGINEERING GROUP INC., <br><br>*Defendant.* | § § § § § § § § § § § § § <br><br>Civil Action No. 3:21-CV-1227-X |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the plaintiffs' motion to remand. [Doc. No. 7.] For the following reasons, the Court **DENIES** the motion. In accordance with the Court's prior Order [Doc. No. 11], the plaintiffs have 21 days to respond to the defendant's motion for summary judgment.

## I.   Background

Plaintiff Raquel Ibarra is Hispanic and the president and owner of Plaintiff Ibarra Consulting Engineers. Defendant Jacobs Engineering Group, Inc. is an international professional-services firm that provides consulting and project delivery for government and private entities, including in the transportation infrastructure industry. In 2015, Ibarra Consulting Engineers and Jacobs created a Joint Venture to participate in a federal program called the Disadvantaged Business Enterprise program.

The Federal Highway Administration is an agency within the United States

1

Department of Transportation that "supports State and local governments in the design, construction, and maintenance of the Nation's highway system," including by providing "financial and technical assistance to State and local governments . . . ."[1] Another thing that the Federal Highway Administration does is help administer the Disadvantaged Business Enterprise program. The Program "is a legislatively mandated federal Department of Transportation program that applies to federal-aid highway dollars expended on federally assisted contracts issued" by state transportation agencies to qualifying small businesses.[2] For our purposes, it suffices to say: state agency + transportation contract + Disadvantaged Business Enterprise recipients + federal dollars = the Program applies.

The Program "ensures that federally assisted contracts for highway, transit and aviation projects are made available for small business concerns owned and controlled by socially and economically disadvantaged individuals."[3] The Code of Federal Regulations guides the implementation of the Program.[4] The Program's objectives include ensuring "nondiscrimination in the award and administration of DOT-assisted contracts in the Department's highway, transit, and airport financial assistance programs" and creating "a level playing field on which [Disadvantaged

---

[1] *See Who We Are*, FEDERAL HIGHWAY ADMINISTRATION, available at https://www.fhwa.dot.gov/about/.

[2] *See Disadvantaged Business Enterprise (DBE) Program*, U.S. DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION, available at https://www.fhwa.dot.gov/civilrights/programs/dbe/.

[3] *Id.*

[4] 49 C.F.R. § 26 (2014).

Business Enterprises] can compete fairly for DOT-assisted contracts . . . ."[5]

Back to this case. Ibarra Consulting Engineers (the Disadvantaged Business Enterprise) and Jacobs had formed a Joint Venture. The Joint Venture, under the auspices of the Disadvantaged Business Enterprise program, in turn entered into an engineering contract with the Texas Department of Transportation.[6] The contract required the Joint Venture to make a "good faith effort" to meet the total Disadvantaged Business Enterprise participation goal of 11.7%.[7] In addition to the total "goal," the Joint Venture also "commit[ted]" to assigning 10% of the contract work to Ibarra Consulting Engineers alone, and 28.7% of the work to the Disadvantaged Business Enterprises together.[8] (There were other firms involved, but none of them matter here.) Under the contract, Jacobs played a large role in receiving work assignments from the Texas Department of Transportation and divvying them up between the Joint Venture members.[9] Finally, the parties were obliged to "not discriminate on the basis of race, color, national origin, or sex in the performance of this contract" and to "carry out applicable requirements of 49 CFR Part 26 in the award and administration of DOT assisted contracts."[10]

Eventually, Ibarra Consulting Engineers "became convinced" that Jacobs was "shorting work" to it and "actively removing work" from it "because [Ibarra

---

[5] *Id.* at § 26.1.

[6] Doc. No. 16 at 11.

[7] Doc. No. 21-1 at 11; Doc. No. 16 at 12.

[8] Doc. No. 21-1 at 14; Doc. No. 16 at 12.

[9] Doc. No. 21-1 at 11. *See also* Doc. No. 1-1 at 5; Doc. No. 16 at 12.

[10] Doc. No. 21-1 at 10.

Consulting Engineers] was a minority-owned business."[11] Ibarra complained to the Texas Department of Transportation.[12] Jacobs and the other Joint Venture members became dissatisfied with Ibarra and voted to remove Ibarra from the Joint Venture.[13]

Ibarra sued Jacobs in state court and asserted various causes of action, including racial discrimination and retaliation claims under 42 U.S.C. § 1981. In a prior iteration of this case, Jacobs removed to the Northern District of Texas.[14] Judge Sam Cummings granted summary judgment to Jacobs on the § 1981 claims, declined to exercise supplemental jurisdiction over the state-law claims, and remanded those claims to state court.[15] Judge Cummings noted that Ibarra's § 1981 allegations were "simply a repackaging of the alleged breach of contract claims asserting that a minimum 10% of invoicing was not allotted to" Ibarra.[16]

Once the case was back in state court, the plaintiffs filed an amended petition. They deleted the § 1981 claim, maintained the breach of contract claim, kept the breach of contract language that Judge Cummings had characterized as a "repackaging" of the § 1981 claim, and expanded the breach of contract allegations by asserting for the first time that Jacobs had "failed to make good faith efforts to ensure that Ibarra" received adequate work assignments as "required" by 49 C.F.R. § 26.[17]

---

[11] Doc. 1-1 at 11 (plaintiffs' operative state-court petition).

[12] *Id.*

[13] Doc. No. 16 at 13–14.

[14] *See Ibarra Consulting Engineers Inc., et al v. Jacobs Eng'g Grp. Inc.*, No. 3:19-cv-1437-C (N.D. Tex.).

[15] *Id.* at Doc. No. 38.

[16] *Id.* at Doc. No. 38 at 2.

[17] *See* Doc. No. 16 at 14–15.

The plaintiffs alleged that Jacobs had "retaliated" against, "disparately treated," and "threatened" them—which is, as the plaintiffs explained, "forbid[den]" by 49 C.F.R. § 26.[18]

Jacobs removed to this Court, asserting federal jurisdiction under 28 U.S.C. § 1331, and moved for summary judgment.[19] The plaintiffs move to remand to state court and argue that Jacobs has not established federal jurisdiction, as is Jacobs's burden.[20]

## II.   Governing Law

Title 28 U.S.C. § 1331 provides that district courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Under this provision, federal courts have jurisdiction (even over suits with only a state-law cause of action) when the case presents a federal question that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disturbing the federal-state balance approved by Congress."[21]

"Jurisdiction is proper" over cases meeting these requirements "because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disruption of Congress's intended division of labor between state and federal courts."[22] This "captures the commonsense

---

[18] *Id.* at 16 (cleaned up).

[19] Doc. No. 4.

[20] Doc. No. 7.

[21] *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

[22] *Id.* (cleaned up).

5

notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues . . . ."[23]

### III.  Analysis

In this case, the parties disagree on three of the four elements that Jacobs must establish for federal jurisdiction under § 1331.

#### A.  *Federal Issue Necessarily Raised*

The plaintiffs contend that a federal issue is not necessarily raised by their breach of contract claim because there is no federal cause of action and because they present alternative bases of recovery.  Jacobs argues that a federal issue is necessarily raised by the plaintiffs' breach of contract claim because, although the plaintiffs seek various forms of relief and multiple bases of recovery, some of the allegations are based solely upon alleged nonconformity with a federal law: the Disadvantaged Business Enterprise program and the attendant regulations of 49 C.F.R. § 26.

For a case to "arise under" federal law, it need not assert a federal cause of action, but lacking one is "relevant to" the determination of whether federal jurisdiction exists.[24]  Even without a federal cause of action here, the Court finds that a federal issue is necessarily raised.

---

[23] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).
[24] *Id.* at 318.

We start with the text of the plaintiffs' complaint,[25] which repeatedly alleges that Jacobs failed to fulfill its duties under the Program.  As just a few examples: the plaintiffs state that the Texas Department of Transportation contract "requires that" 49 C.F.R. § 26 "be complied with."[26]  The plaintiffs allege that Jacobs "violated" § 26 by failing to process the plaintiffs' invoices and failing to make a good faith effort.[27]  They allege that Jacobs racially discriminated against them and retaliated against them in violation of § 26.[28]  And they allege that § 26 provided them a right to "complain" to the Texas Department of Transportation—which is what they allege Jacobs used a basis for voting them out of the Joint Venture.[29]  Finally, the plaintiffs identified specific Program regulations that Jacobs allegedly failed to follow.[30]

The plaintiffs are unequivocally claiming that Jacobs breached duties placed upon it by the federal Program.  Necessarily raised by the plaintiffs' allegations are issues about "the contours of the defendant's federal duty . . . , the scope of that duty, and whether the defendant's actions amounted to a breach of that duty."[31]  Sure, the plaintiffs assert that the contract (in addition to § 26) requires Jacobs to, for example, provide them 10% of the contract work.  But that doesn't mean that a federal issue isn't necessarily raised.

---

[25] Called a "petition" in Texas state court.

[26] Doc. No. 1-1 at 5.

[27] *Id.* at 8–9, 21–22.

[28] *Id.* at 16.

[29] *Id.* at 17.

[30] *Id.* at 20.

[31] *NASDAQ OMX Grp., Inc. v. UBS Secs. LLC*, 770 F.3d 1010, 1023 (2d Cir. 2014) (cleaned up).

As the Fifth Circuit explained in *Board of Commissioners of the Southeast Louisiana Flood Protection Auth. – East v. Tennessee Gas Pipeline Co., L.L.C.*:

> The Board's negligence claim in fact requests relief for multiple distinct injuries and refers to multiple sources of law that might establish a duty of care, and it is not the case that just because some of these sources are drawn from state law and some from federal law that the two sources are redundant and therefore "alternative." . . . Defendants correctly point out that the Board's complaint draws on federal law as the exclusive basis for holding Defendants liable for some of their actions . . . .
>
> * * *
>
> The absence of any state law grounding for the duty that the Board would need to establish for the Defendants to be liable [for altering levee systems built by the United States and for failing to restore dredged or modified areas to their natural state] means that the duty would have to be drawn from federal law.  Supreme Court precedent is clear that a case arises under federal law where "the vindication of a right under state law necessarily turns on some construction of federal law," and the Board's negligence and nuisance claims thus cannot be resolved without a determination whether multiple federal statutes create a duty of care that does not exist under state law.[32]

Here, the federal Program (specifically, § 26.109(d)) is the only basis for recovery on at least the plaintiffs' allegations of racial discrimination and retaliation because no state law provides a similar duty.  Under Fifth Circuit precedent, therefore, Jacobs has satisfied the first element for federal jurisdiction.

---

[32] *Bd. of Comm'rs of the Se. La. Flood Protection Auth. – East v. Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 722–23 (5th Cir. 2017) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)).

B. *Federal Issue Actually Disputed*

The parties agree, as does the Court, that Jacobs satisfies this element. Jacobs does actually dispute that it violated the Program's requirements.

C. *Federal Issue is Substantial*

The plaintiffs also argue that this case doesn't present a substantial federal issue because the question is simply whether Jacobs violated the Program (a fact question) and not how to correctly interpret the Program (a legal question). The Court disagrees with that characterization. Although there are cases that present only fact questions about a defendant's alleged violation of federal law and thus do not present substantial federal issues (and plaintiffs cite to some[33]), this is not one of those cases.

Jacobs's duty to not discriminate or retaliate against the plaintiffs is imposed by 49 C.F.R. § 26.109(d). It provides that Program participants

> must not intimidate, threaten, coerce, or discriminate against any individual or firm for the purpose of interfering with any right or privilege secured by this part[,] or because the individual or firm has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part.[34]

---

[33] *See, e.g., McGee v. Veterans Land Bd. of Tex.*, No. 3:17-CV-1423-B, 2018 WL 1640221, at *2–3 (N.D. Tex. Apr. 5, 2018) (Boyle, J.) (finding no substantial federal issue where plaintiff alleged violation of regulations promulgated by the Secretary of the federal department of Housing and Urban Development because (1) the Northern District of Texas regularly remands cases about the same regulations, (2) state law imposed the same duties on the defendant as that imposed by the HUD regulations and thus served as a true alternative basis of recovery, and (3) the case presented pure questions of fact). *But see Buis v. Wells Fargo, N.A.*, 401 F. Supp. 2d 612, 616–17 (N.D. Tex. Nov. 18, 2005) (Lindsay, J.) (finding substantiality in a similar HUD-regulation case because "resolution of the issues raised in this case necessarily turns on the interpretation of federal regulations genuinely disputed by the parties").

[34] 49 C.F.R. § 26.109(d)

Part 26 does not define "discrimination" or "retaliation." The Court is not aware of *any* federal or state decision interpreting the duties imposed by this regulation. Deciding whether Jacobs retaliated or discriminated against the plaintiffs in voting them out of the Joint Venture or allocating work assignments is simply not a straightforward, factual, yes-or-no inquiry. It will at least require determining the contours of the duties imposed by § 26.109(d) and will also likely call for interpretation of other requirements under § 26, such as § 26.53's requirement for participants to make a "good faith effort" if the contract's Disadvantaged Business Enterprise participation goal is not met.

The Court finds that this case presents substantial issues for the federal system as a whole. Accordingly, Jacobs satisfies the third element.

> D. *Federal Issue Capable of Resolution Without Disrupting the Federal-State Balance*

In their motion to remand, the plaintiffs do not actually argue that allowing this case to proceed in federal court *would* disrupt the federal-state balance as much as they argue that Jacobs hasn't established that doing so *would not* disrupt the federal-state balance. And that's fine—because it is Jacobs's burden, after all. For its part, Jacobs contends that it has satisfied this element because it would not lead to, as the Fifth Circuit said in *Board of Commissioners*, a "potentially enormous shift of traditionally state cases into federal court."[35]

---

[35] *Bd. of Comm'rs*, 850 F.3d at 725 (quoting *Grable*, 545 U.S. at 319).

Although generic breach of contract claims are certainly "traditionally state cases," this is no generic claim. The plaintiffs' allegations center on a few specific requirements of the Program and, as explained above, *no* court has explored the meaning of § 26's anti-retaliation-and-discrimination provisions. Which implies that there will be no "enormous shift" of cases to the federal docket if this one gets shifted. There appear to be no "threatening structural consequences."[36] Accordingly, the Court finds that Jacobs established this final element for jurisdiction under 28 U.S.C. § 1331.

## IV. Conclusion

The Court **DENIES** the plaintiffs' motion to remand. They have 21 days from today to respond to the defendant's pending motion for summary judgment.

**IT IS SO ORDERED** this 10th day of January, 2022.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[36] *Grable*, 545 U.S. at 319.